## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CLARENCE PARKER,                          :

　　　　　Petitioner,                     :          Case No. 3:09cv266
                                                     Case No. 3:04cr140(7)

vs.                                       :
                                                     District Judge Thomas M. Rose
UNITED STATES OF AMERICA,                 :          Magistrate Judge Sharon L. Ovington

　　　　　Respondent.                     :

## REPORT and RECOMMENDATIONS[1]

　　　　This matter is before the Court on *pro se* Petitioner Clarence Parker's

motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence (Case

No. 3:04cr140, Doc. #728);[2] Respondent's opposing memorandum (Doc. #735);

and the record as a whole.  Encompassed within Parker's motion is his request

for an evidentiary hearing and discovery with respect to his Section 2255 claims

(*see* Doc. #728 at 1), which Respondent also contests.  (*See* Doc. #735 at 13-14).

　　　　As a review of the record and the undisputed facts shows conclusively that

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Although not expressly stated, all further docket references will be to the docket number assigned in the underlined criminal case.

Petitioner is entitled to no relief and that an evidentiary hearing is not warranted, the Court recommends that Parker's Section 2255 action be dismissed.

## PROCEDURAL HISTORY/THE PARTIES' CLAIMS

On December 15, 2004, Parker was named as one of multiple defendants in a Superseding Indictment filed in the United States District Court in Dayton, Ohio.  (*See* Doc. #170).  According to the United States Court of Appeals for the Sixth Circuit,

> [t]he facts are not in dispute.  Briefly, Parker was a member of [a] large-scale powder and crack cocaine distribution and money laundering organization based in Dayton, Ohio.  In 2004, he was charged with (1) conspiracy to distribute and to possess with the intent to distribute in excess of 150 kilograms of cocaine, and (2) conspiracy to launder money.  Parker pleaded guilty to the two charges, knowing that the statutory maximum sentence was life imprisonment, the statutory mandatory minimum sentence was 10 years, and the applicable advisory guidelines range was 135 to 168 months.  The district court sentenced Parker to the mandatory minimum sentence of 120 months.
>
> A year after Parker was sentenced, the government filed a motion to reduce Parker's sentence pursuant to Rule 35(b).  Based on that motion, Parker was re-sentenced to 60 months in prison on both counts to run concurrently.

*United States v. Parker*, 543 F.3d 790, 791 (6th Cir.), *cert. denied*, ___ U.S. ___, 129 S. Ct. 740 (2008).  The Superseding Indictment also named Parker in a forfeiture allegation brought pursuant to 21 U.S.C. § 853, seeking forfeiture of $69,935.00 in

U.S. currency seized from Parker on or about March 8, 2002. (Doc. #170 at 8-9).

Parker's guilty plea before U.S. District Judge Thomas M. Rose (*see* Doc. #243) was made pursuant to a written plea agreement between Parker and the government, the provisions of which included, in part, the following language:

> [Parker] will enter pleas of guilty to Counts 1 and 2 of the Superseding Indictment filed herein on December 14, 2004. Count 1 charges him with Conspiracy to Distribute and Possess with Intent to Distribute in Excess of 150 kilograms of cocaine in violation of 21 U.S.C. § 846 and 841 (b)(1)A which carries a minimum mandatory punishment of 10 years to life imprisonment, a fine up to $4,000,000, and a term of supervised release of at least five years. Count 2 charges him with Conspiracy to Launder Money in violation of 18 U.S.C. § 1956(h) which carries a penalty of up to 20 years imprisonment, a fine of $500,000 or twice the value of the property involved in the transaction (whichever is greater), and a term of supervised release of 3 years.
>
> * * *
>
> . . . The defendant is further aware that the District Court has jurisdiction and authority to impose any sentence within the statutory maximum set forth for the offense to which the defendant pleads guilty. The defendant is aware that the Court has not yet determined a sentence. The defendant is also aware that any estimate of the probable sentencing range under the United States Sentencing Guidelines that the defendant may have received from the defendant's counsel, the United States, or the probation office, is a prediction, not a promise, and is not binding on the United States, the probation office, or the Court. The

> United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw the guilty plea based upon the actual sentence imposed.
>
> * * *
>
> The defendant understands that there is no agreement concerning his ultimate sentence.  The defendant could receive the maximum penalty provided by law.

(Doc. #242 at 1, 3-4).  That written plea agreement was signed by Parker, his defense attorney, and an assistant U.S. Attorney.  (*Id.* at 5).

Following the reduction of his sentence to 60 months (*see* Doc. ##550, 563, 564), on October 31, 2006, Parker filed a notice of appeal.  (Doc. #566).  On October 6, 2008, the United States Court of Appeals for the Sixth Circuit dismissed Parker's appeal for lack of appellate jurisdiction.  *Parker*, 543 F.3d at 791.  (*See* Doc. ##707, 708).  The United States Supreme Court denied Parker's petition for writ of certiorari to that Court on December 8, 2008.  *United States v. Parker*, ___ U.S. ___, 129 S. Ct. 740 (2008).

On July 13, 2009, Parker filed his *pro se* 28 U.S.C. § 2255 motion in this Court, seeking to vacate, set aside or correct his sentence "as unlawful and unconstitutional under the Second, Fifth, Sixth, and Eighth Amendments to the United States Constitution."  (Doc. #728 at 1).  He sets forth three somewhat disjointed bases for relief, summarized under the following headings:

*-4-*

> Ground One: Sixth Amendment Ineffective Assistance
> of Counsel
>
> Ground Two: Violation of the Eighth Amendment/
> Society's Evolving Standards of Decency
>
> Ground Three: Sentence Imposed Infringes Fifth
> Amendment Equal Justice Principles and Structural
> Separation of Powers Principles

(*Id.* at 6-22).

As to the ineffective assistance of counsel ground, Parker in essence argues that his trial counsel performed deficiently by failing to argue mitigating factors and by failing to assure that the plea deal he accepted resulted in a two year sentence that he apparently believes would have been appropriate instead of the five year prison sentence he ultimately received.  (*See id.* at 10).  Next, Parker suggests that his sentence offends the Eighth Amendment by defying "evolving standards of decency" trending against harsh punishment for those convicted of drug crimes.  (*Id.* at 11-20).  Finally, Parker seems to contend that he was denied equal protection of the laws by being sentenced more harshly than others in similar circumstances.  (*Id.* at 21-22).  He also requests an evidentiary hearing and an opportunity to conduct discovery.  (*Id.* at 1).

In response, the United States maintains that Parker has not demonstrated any way in which his trial counsel was constitutionally deficient (Doc. #735 at 7-

10); that his sentence was proper and not disproportionate to his crime (*id.* at 10-12); and that his "conclusory allegations" do not entitle him to a hearing or discovery as to this matter.  (*Id.* at 13-14).  This matter now is ripe for decision.

## APPLICABLE LAW

### 28 U.S.C. § 2255

A federal prisoner who claims that his sentence was imposed in violation of the Constitution or laws of the United States or "is otherwise subject to collateral attack" may move the sentencing court to vacate, set aside or correct his sentence.  28 U.S.C. § 2255(a).  A one year limitations period applies to such actions.  28 U.S.C. § 2255(f).  Unless the record "conclusively show[s] that the prisoner is entitled to no relief," the court is to hold a hearing, determine the issues, and make findings of fact and conclusions of law.  28 U.S.C. § 2255(b).

If a Section 2255 motion is not dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted."  Rules Governing § 2255 Proceedings, Rule 5(a); *see also Ross v. United States*, 339 F.3d 483, 490-91 (6th Cir. 2003).  Where a factual dispute exists, "the habeas court <u>must</u> hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added)

(quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)), *cert. denied*, 552 U.S. 1217 (2008); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief.").

"[T]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light." *Valentine*, 488 F.3d at 333 (citing *Turner, supra*); *see also Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). However, the district court need not conduct an extensive evidentiary hearing in every instance. *See Wright v. United States*, 320 F. App'x 421, 427 (6th Cir. 2009). "Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Id.* (parenthetical in original) (citing *Smith*, 348 F.3d at 550-51). Accordingly, the reviewing court is to determine what material issues of fact require resolution via an evidentiary hearing.

In most Section 2255 proceedings, "the court may appoint counsel" to represent the petitioner. 28 U.S.C. § 2255(g). "If an evidentiary hearing is warranted," however, "the judge <u>must</u> appoint an attorney to represent a moving

party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rules

Governing § 2255 Proceedings, Rule 5(c) (emphasis added). Any hearing

determined to be necessary shall be held "as soon as practicable after giving the

attorneys adequate time to investigate and prepare." *Id.*

### Right to Effective Assistance of Counsel

The "Assistance of Counsel" guaranteed by the Sixth Amendment

presumes that a criminal defendant has "the right to the <u>effective</u> assistance of

counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (emphasis added)

(quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish a

claim of ineffective assistance of trial counsel, a criminal defendant must make a

two-part showing:

> First, the defendant must show that counsel's
> performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see also O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir.

2007). To satisfy the prejudice prong, a defendant "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Overall, the constitutional standard for adequate representation is "an objective standard of reasonableness" in line with "prevailing professional norms." *Strickland*, 466 U.S. at 687-88.  Counsel's performance also should be evaluated in light of the totality of the circumstances.  *See id.* at 690; *Mason v. Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003).

The *Strickland* standard applies not only to counsel's performance during trial, but also in the context of representation provided during plea hearings, with the second prong focusing on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006).  With respect to claimed deficiencies in representation as to a criminal defendant's sentence, the same *Strickland* factors apply: *i.e.*, the petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that absent such shortcoming, the outcome likely would have been different. *See Glover v. United States*, 531 U.S. 198, 204 (2001); *Green v. United States*, 65 F.3d

546 (6th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996).

A defendant's failure to satisfy either prong of the *Strickland* test obviates the need for the court to consider the other prong. *See Strickland*, 466 U.S. at 697; *see also Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).

## Right Against Cruel and Unusual Punishment/Disproportionality

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments." Although such prohibition has been recognized to extend to punishment that is "grossly disproportionate to the severity of the crime," *see, e.g., Ingraham v. Wright*, 430 U.S. 651 (1977) (citing *Weems v. United States*, 217 U.S. 349 (1910)); *Hutto v. Finney*, 437 U.S. 678 (1978), "successful challenges to the proportionality of particular sentences have been exceedingly rare" outside the context of capital punishment. *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *see also Harmelin v. Michigan*, 501 U.S. 957, 963 (1991) (quoting *Rummel, supra*).[3]

To determine whether a penalty is so disproportionate as to constitute "cruel and unusual punishment" within the meaning of the Eighth Amendment,

---

[3]Indeed, the Eighth Amendment does not even require consideration of mitigating factors at sentencing in non-capital cases. *Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) (citing *Harmelin*, 501 U.S. at 995).

courts must look to "the evolving standards of decency that mark the progress of a maturing society." *Roper v. Simmons*, 543 U.S. 551, 561 (2005) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958)). Objective evidence of such standards can be derived from legislative enactments. *Penry v. Lynaugh*, 492 U.S. 302, 335 (1989).

In *Harmelin*, the plurality re-clarified that "the Eighth Amendment does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime." 501 U.S. at 959 (Kennedy, J., concurring); *see also, e.g., United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991); *United States v. Sherrod*, 53 F.3d 332 [table], 1995 WL 253178, at *4 (6th Cir. 1995) ("the [E]ighth [A]mendment is offended only by an extreme disparity between crime and sentence"); *Davis v. United States*, No. 1:06CR127, 2010 WL 2232411, at *7 (N.D. Ohio May 26, 2010). As a result, "[a] defendant challenging his sentence under the Eighth Amendment has a tremendously difficult burden to meet." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011), *petition for cert. filed*, No. 10-10300 (Apr. 22, 2011). "In the last century, the Supreme Court has struck down only a handful of non-capital sentences under the Eighth Amendment, and those cases have been egregious in the extreme." *Id.*

Ultimately, the Court in *Harmelin* upheld the constitutionality of the mandatory life sentence without the possibility of parole entered against the

defendant there, who had no criminal history and was convicted of simple possession of 672 grams of cocaine.  501 U.S. at 996.  Using the outcome in *Harmelin* as a guideline, "it follows *a fortiori*" that lesser sentences for convictions of more serious offenses do not violate the Eighth Amendment's "cruel and unusual punishment" provision.  *Sherrod*, 1995 WL 253178, at *4.  Indeed, as observed by the district court in *Davis*, "[h]aving adopted this principle of 'narrow proportionality,'" the Sixth Circuit repeatedly "has affirmed lengthy prison sentences for drug crimes."  2010 WL 2232411, at *7 (citing *United States v. Jones*, 569 F.3d 569 (6th Cir. 2009) (mandatory 10 year sentence for conspiracy to possess with intent to distribute 50 grams of cocaine base not grossly disproportionate); *United States v. Odeneal*, 517 F.3d 406 (6th Cir. 2008) (mandatory life sentence for conspiracy to possess with intent to distribute 50 grams of cocaine base not grossly disproportionate); *United States v. Stone*, 218 F. App'x 425 (6th Cir.) (mandatory life sentence for conspiracy to distribute 50 or more grams of cocaine bass not grossly disproportionate), *cert. denied*, 551 U.S. 1158 (2007)).

## ANALYSIS

### Ineffective Assistance of Counsel Claim

*a)  Failure to adequately advise Petitioner with respect to plea*

Parker first contends that his Sixth Amendment right to effective assistance

of counsel was violated by his original attorney's "not merely unreasonable, but grossly incompetent," performance during plea negotiations as to both the original and superseding indictments against him.  (Doc. #728 at 7, 7-9).  The gist of Parker's argument in this regard is captured in his assertion that

> the simple fact that a first-offender was sentenced to Five Years (60 months) in federal [prison] for a minor role and co-operation itself provides stark evidence that trial counsel did not provide reasonable assistance and that his [sic] failings greatly prejudiced Parker.

(*Id.* at 6).  A review of his ineffective assistance arguments in their entirety confirms that Parker's complaint appears to be not with his trial counsel's advice that he accept a plea, but with the fact that "his [sic] representation allowed a relatively minor offender like Parker to receive [a] long sentence for his first criminal conviction."  (*Id.* at 7).

Considering whether Parker can show that his trial attorney's performance with respect to his plea fell below *Strickland*'s objective reasonableness standard, *see* 466 U.S. at 694, this Court concludes that he could not, even if given the benefit of discovery.  Initially, the Court notes Parker's own admission that the "the facts and evidence surrounding [his] case would have made contesting guilt on the conspiracy and intent to distribute cocaine [charges] a very bad strategy," and his corresponding recognition that "competent counsel would have advised

[him] . . . to limit his sentencing exposure." (*Id.* at 7). Moreover, Parker concedes that "[c]ompetent counsel <u>did</u> advise Parker that a plea deal (perhaps coupled with cooperation [with the government investigation]) was the surest and most effective way to limit his sentencing exposure and to reduce the sentence he would likely receive." (*Id.*) (emphasis added).

In effect, then, Parker admits the reasonableness of his trial attorney's strategy to negotiate a plea agreement to minimize as much as possible the potential term of incarceration Parker faced. Because a defendant who entered a guilty plea may satisfy *Strickland*'s "prejudice" requirement" only by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *see Hill*, 474 U.S. at 58, Parker's acknowledgment that a guilty plea plus cooperation with the government investigation was the "most effective way . . . to reduce the sentence he would likely receive" prevents him from showing that he was prejudiced by his trial attorney's advice to accept a plea agreement.

Despite his seemingly fatal concessions, *supra*, Parker also cites authority for the proposition that an attorney performs deficiently when he or she "fails to sufficiently explain and advise a client about 'the substantial difference between the likely sentencing ranges upon conviction after trial and upon guilty plea.'"

*-14-*

(Doc. #728 at 9) (citing *Cullen v. United States*, 194 F.3d 401, 403-04 (2d Cir. 1999),

*United States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir. 1994)). Conversely, however,

evidence that a criminal defendant knew what possible punishment awaited him

following a guilty plea negates any constitutional claim based on counsel's

supposed failure to inform that defendant of his sentencing exposure. *See, e.g.,*

*King v. Dutton*, 17 F.3d 151, 153 (6th Cir.), *cert. denied*, 512 U.S. 1222 (1994); *Boyd v.*

*Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) (citing *United States v. Stubbs*, 279 F.3d

402, 412 (6th Cir. 2002)); *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied*, 528

U.S. 847 (1999); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

 Here, the record confirms that Parker was aware of the potential

sentencing range he faced as a result of accepting the plea agreement offered by

the United States. The written plea agreement signed by Parker explicitly stated

that Count 1 of the indictment to which he was pleading carried "a minimum

mandatory punishment of 10 years to life imprisonment;" that the Court "ha[d]

jurisdiction and authority to impose any sentence within the statutory

maximum;" that the United States "ma[de] no promise or representation

concerning what sentence the defendant w[ould] receive; that "there [wa]s no

agreement concerning his ultimate sentence;" and that "[t]he defendant could

receive the maximum penalty provided by law." (Doc. #242 at 1, 3-4). The

Court's oral guilty plea colloquy reinforced those provisions, including the

following exchange:

> THE COURT: Well, let me first start with your counsel,
> Ms. Harvey. Have you had an opportunity to talk with
> Mr. Parker about the sentencing potential in this case[?]
> Specifically, the possible statutory maximums with
> regard to each Count, and the sentencing guideline
> calculation which you have estimated?
>
> MS. HARVEY: Yes, Your Honor, I have.
>
> THE COURT: Could you please share with the record
> your discussion with Mr. Parker, with regard to the
> statutory maximum, specifically what I'm looking for is
> the statutory maximum imprisonment[,] fine, of course,
> supervised release and special assessment.
>
> MS. HARVEY: Yes, Your Honor. For the statutory
> provision I have advised Mr. Parker that count one drug
> case, carrying a minimum mandatory term of
> imprisonment of 10 years going all the way up to life
> imprisonment. A fine of Four Million Dollars. A term
> of supervised release of at least five years.
>
> For Count 2, money laundering, I have advised him that
> it carries up to 20 years. That there is no minimum
> mandatory. And that there is a fine. A possibility of up
> to half a Million Dollars or twice the value of the
> property involved in the transaction or the greater of the
> two. And a term of supervised release for three years.
>
> THE COURT: Okay. And you also discussed with him
> the fact that there would be a One Hundred Dollar
> mandatory special assessment for each of those counts.
>
> THE DEFENDANT: Yes.

-16-

THE COURT:  Did Mr. Parker appear to understand those statutory maximums?

MS. HARVEY:  Yes, Your Honor.

THE COURT:  Is there anything[ . . .]?  Did Mr. Parker have any questions and if so were you able to answer his questions and address his concerns?

MS. HARVEY:  He asked several questions, Your Honor, on a couple of different occasions to go over the provisions and mandatories and so forth, with Mr. Parker with regard to the statutory maximums.

THE COURT:  Did you understand the explanation that your counsel gave you with regard to what the statutory maximum penalty, punishment could be if I would accept your pleas of guilty and I make a finding of guilty in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  So, you understand that on the Count 1 that there is a minimum mandatory punishment of ten years and a maximum punishment of up to life imprisonment.

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand what the term minimum mandatory means?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  And minimum mandatory just simply means that unless the Court would have before it a certain type of motion that the Court could make

certain findings, the minimum that the Court could
sentence you with regard to Count 1 would be ten years.
Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Is there anything that is
confusing or that you have any questions about there?

THE DEFENDANT:  No, sir.

THE COURT:  All right.  You understand that the
maximum of Count 1 is life imprisonment?  You
understand that the maximum fine could be up to Four
Million Dollars and you understand that there is a
supervised release term of at least five years?

THE DEFENDANT:  Yes, sir.

* * *

THE COURT:  All right.  And we talked about statutory
maximums in Count 2.  You understand that there is a
20 year maximum imprisonment?  $500,000 maximum
fine and or twice the value of 22 property involved in
the transaction, whichever is greater[?]  And a term of
supervised release of three years[?]

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have any questions about any of
those statutory maximums?

THE DEFENDANT:  No, sir.

(Doc. #633 at 12-15, 16-17).

As the foregoing excerpts illustrate, aside from whatever private

*-18-*

conversations she may have had with Parker, defense counsel stated on the record, in Parker's presence at his plea hearing, that "a minimum mandatory term of imprisonment of 10 years going all the way up to life imprisonment" applied to the first count to which Parker was pleading guilty. (Doc. #633 at 13). In addition, Parker himself expressly affirmed on the record that his counsel did discuss the mandatory minimum sentences with him, and that he understood them. (*See id.* at 14-15, 16-17). Combined with the district judge's references to and explanation of that 10 year mandatory minimum during the plea colloquy (*see id.* at 14-15, 16-17), those portions of the record provide overwhelming evidence that Parker was well aware of the mandatory minimum sentence that he potentially faced by pleading guilty. Such record evidence overcomes any possible inference that Plaintiff might have insisted on going to trial but for some alleged oversight by his trial counsel regarding the consequences of his plea. *See United States v. Nimocks*, 234 F.3d 1270 [table], 2000 WL 1679469, at *5 (6th Cir. 2000).

Finally, in addition to the foregoing, this Court disagrees with Parker's self-characterization as "a relatively minor offender" (Doc. #735 at 7) who played only a "peripheral" (*id.* at 9, 20) or "minor role " (*id.* at 1, 6) in the conspiracy that led to his conviction. The Sixth Circuit described Parker's crime as involving "[a]

large-scale powder and crack cocaine distribution and money laundering

organization." *Parker*, 543 F.3d at 791.  Parker pled guilty to "conspiracy to

distribute and possess with intent to distribute in excess of <u>150 kilograms of</u>

<u>cocaine</u>, a Schedule II controlled substance," and to "conspiracy to launder

money."  (Doc. #294) (emphasis added).  The signed plea agreement

accompanying that guilty plea, and the district judge at the time of Parker's oral

plea, expanded on the facts underlying Parker's crime, stating that

> From about September 27, 1996, up to and including
> October 12, 2004, . . . CLARENCE PARKER traveled
> between Illinois, Indiana and Ohio, on some occasions
> with co-defendants . . ., to conduct business on behalf of
> the conspiracy.  This business including transporting or
> assisting in the transportation and distribution of
> cocaine and cash proceeds derived from the
> conspiracy's unlawful drug distribution.

(Doc. #242 at 6; Doc. #633 at 7-8).  Moreover, in his own "Statement of Facts"

within the very same Section 2255 filing in which he terms his offense "minor"

(*see* Doc. #728 at 7), Parker himself details his role in the conspiracy as follows:

> Mr. Parker was a member of the Earl Marshall drug
> organization which distributed in excess of 150
> kilograms of cocaine.  Mr. Parker transported multi-
> kilograms of cocaine and U.S. currency, on Marshall's
> behalf, between Chicago, Illinois[,] and Dayton, Ohio.
> Mr. <u>Parker</u> <u>made</u> <u>numerous</u> <u>trips</u> between Chicago and
> Dayton for Marshall <u>and</u> <u>was</u> <u>responsible</u> <u>for</u>
> <u>transporting</u> <u>at</u> <u>least</u> <u>150</u> <u>kilograms</u> <u>of</u> <u>cocaine</u>.

(*Id.* at 3).

In the view of this Court, a defendant who admittedly made multiple interstate trips over the course of some six years in order to transport personally "at least 150 kilograms of cocaine" as part of an unlawful drug distribution conspiracy (*see id.*), and who also participated in a conspiracy to launder the proceeds of such drug crimes, including $69,935.00 in U.S. currency found on his person at the time of his arrest (*see* Doc. #170 at 8-9), is <u>not</u> a "minor offender." Because the Court rejects the premise that Parker was "a relatively minor offender" as to whom the sentence imposed seems unduly "long" (*see* Doc. #728 at 7), this Court likewise rejects the premise that the length of Parker's sentence alone presumptively establishes that his counsel was constitutionally deficient.

As he can establish neither that his counsel committed a serious error nor that he was prejudiced by any such omission, Parker cannot maintain a viable ineffective assistance of counsel claim based on any unspecified purported omissions by his attorney that led to Parker receiving a five year sentence for the offenses to which he pled guilty.  *See Strickland*, 466 U.S. at 687.  Parker's Section 2255 filing on that basis therefore lacks merit.

   b)  *Failure to bring forth evidence of mitigating factors before sentencing*

Citing authority for the proposition that counsel may be constitutionally

ineffective for failing to present expert testimony (*see* Doc. #728 at 9-10), Parker next argues that his trial counsel was ineffective for failing to "[b]ring [f]orth [e]vidence of [m]itigating [f]actors" before Parker was sentenced.  (*Id.*).  However, nowhere within that section of his Section 2255 memorandum does Parker identify <u>what</u> evidence he believes that his counsel should have presented in an effort to minimize further the length of the sentence he received.  (*See id.* at 9-10).

Inferring from one drug-related case he cites[4] that Parker contends his counsel should have retained an expert to contest the quantity of drugs with which he was charged, Respondent urges that such decision is readily distinguishable from the facts confronting Parker.  (Doc. #735 at 8-9).  The Court agrees.  The defendant in the cited case had been charged based on the government's projection of the amount of methamphetamine he could have manufactured from chemicals in his possession, despite the fact that only residue of that actual drug was found at his residence.  *Becker*, 109 F. App'x at 266.  By contrast, Parker admitted to transporting in excess of 150 kilograms of cocaine.  (*See* Doc. #242 at 1, 7; Doc. #633 at 7-10).  Not only does Parker offer no explanation as to how any "expert" could have assisted in the defense of his situation, but his informed decision to plead guilty would seem to obviate the

---

[4]*United States v. Becker*, 109 F. App'x 264, 267-69 (10th Cir. 2004) (cited in Doc. #728 at 9).

usefulness of expert services. Moreover, given that the other decisions cited in this section of Parker's memorandum are equally or even more inapposite (*see* Doc. #728 at 9-10),[5] the Court is unable to discern the nature of any "mitigating evidence" that Parker claims may have been available yet was not developed by counsel and presented on Parker's behalf, or how any such evidence likely would have affected the sentence the Court imposed.

Having failed to establish both that his counsel committed a serious error and that he was prejudiced by such error with respect to mitigation evidence, Petitioner again has failed to state a viable ineffective assistance of counsel claim on that basis.

### c) Cumulative ineffectiveness in light of weak evidence

Under the final heading of his ineffective assistance of counsel arguments, Parker asserts that his "counsel's numerous and repeated [m]istakes . . . resulted in a sentence more than twice as long as would have resulted [with] effective assistance of counsel." (Doc. #728 at 10). Those alleged "mistakes" as there enumerated by Parker consisted of "failing to paint a true and complete picture

---

[5] *See Stouffer v. Reynolds*, 214 F.3d 1231 (10th Cir. 2000) (involving, *inter alia*, counsel's failure to retain experts to counter prosecution experts in capital murder case); *Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005), *cert. denied*, 547 U.S. 1191 (2006) (involving counsel's failure to employ medical expert in child sex abuse case); *Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005), *cert. denied*, 547 U.S. 1019 (2006) and *Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432 (9th Cir. 1995) (both involving counsel's failure to obtain ballistics and/or forensics expert in capital murder case).

of Parker's [a]ssistance to make the government's case," and failing to assure that appropriate sentencing consideration was given for Parker's "employment record and continuation of education." (*Id.*). Parker apparently contends that those purported mistakes, combined with counsel's failure to negotiate a more favorable plea agreement and failure to advocate successfully that Parker's involvement was "peripheral" (*see id.* at 9), had such "a pervasive effect" on the outcome of his case (*id.* at 10) as to amount to constitutionally ineffective assistance of counsel.

For multiple reasons, the Court finds that Parker's contention in this regard lacks merit. As Respondent aptly notes (Doc. #735 at 9), under the applicable federal sentencing guidelines, while a defendant's education and employment record "may be relevant in determining the conditions of probation or supervised release," those factors are "not ordinarily relevant in determining whether a departure" – *i.e.*, a reduction in sentence – "is warranted." *See Fed. Sent. Guideline* §§ 5H1.2, 5H1.5. As result, any alleged failure by Parker's counsel to bring to the Court's attention Parker's education and/or employment record presumably had <u>no</u> effect on the length of the sentence that Parker received, and would not support a claim of ineffective assistance of counsel. Additionally, for reasons stated *supra*, this Court expressly rejected Parker's characterization of his role in

-24-

the conspiracy as "minor" or "peripheral," and any purported deficiency of counsel dependent upon the discredited "peripheral" nature of Parker's involvement thus is rejected as well.

Finally, the Court reiterates its conclusion that Parker did not, and cannot, establish that his trial counsel was ineffective simply because Parker received a sentence in excess of what he anticipated or desired.  Not surprisingly, Parker discloses no source for his assertion that the sentence imposed by the Court was "more than twice as long" as what he would have received with the benefit of constitutionally effective assistance of counsel.  (Doc. #728 at 10).  He also identifies no basis in fact or in law for his similar contentions that competent legal representation would have yielded a sentence of 24 months rather than five years.  (*See id.* at 10).  The Court surmises, however, that Parker's oblique references to a 24 month sentence are derived from his trial counsel's preliminary calculation of his optimal sentencing range, recorded as follows in the transcript of Parker's plea hearing:

> THE COURT:  Could you please just briefly summarize for the record your discussion with Mr. Parker concerning discussion of the sentencing, advisory sentencing guidelines[?]  And **what I'm looking for** here **is** specifically **any estimate** that you may have made **with regard to** the offense level, a criminal history category and **range of sentence**.

MS. HARVEY:  Yes, Your Honor.  As far as a criminal history category, **I estimated** of a criminal history category I, which is the lowest criminal history category. As far as the offense level.  I have given him a fairly wide range just due to the nature of the indictment.  I calculated for Count One, pursuant to 2D 1.1, an Offense Level of 38.  An offense level of 38 with a Criminal History Category I, **I would estimate** the guideline range to be 235 up to 293 months imprisonment.  **I** do expect and **hope** that **he'll receive a** 3 point **reduction** for acceptance.  That brings the offense level to 35 and that would be a range of 168 through 210.  **There is** also **the possibility** that **he might qualify for a further reduction** under 2.1 for an additional 3 levels, which would take him to a 32, for a range of 121 and 151 months.

And **there is a possibility** that he would be found to have played **a mitigating role**.  That would be an **additional reduction**, which **I estimate** would bring it down to an offense level of 30 which was 97 to 121 months.

**There is** also **a fairly decent possibility** he would qualify for the safety valve reduction **for a further reduction** and would go **down to** an offense level of 17 which is **24 to 30 months of imprisonment**.  That summarizes the discussion for Count 1.

(Doc. #663 at 17-19) (emphasis added).

As should be obvious, defense counsel's "estimate," solicited by the district judge, as to the most lenient sentence that Parker might be able to receive should he prove to be eligible for all possible reductions and if all sentencing factors were to be weighed in his favor, is <u>not</u> the standard by which that counsel's

-26-

professional performance is to be judged for purposes of constitutional effectiveness in accordance with *Strickland*. Indeed, given that Parker faced the prospect of a mandatory minimum sentence of 10 years and up life imprisonment in the light of the seriousness of his offenses, the later reduction in his sentence to a total of 5 years incarceration represents a significant degree of success.

In summary, Parker's ineffective assistance of counsel claim lacks substantive merit, and his Section 2255 motion on that basis should be denied.

**Eighth Amendment Disproportionate Sentence Claim**

In his second ground for relief, Parker suggests that the sentence he received is "[g]rossly [d]isproportionate" to his crime and thus violates the Eighth Amendment's guarantee against cruel and unusual punishment, as "a sentence given without consideration of all the mitigating factors equates to an unconstitutionally excessive term of imprisonment." (Doc. #728 at 16). Once again, the Court finds that Parker's arguments cannot prevail, for numerous reasons.

While Parker accurately asserts that the scope of what constitutes "cruel and unusual punishment" is influenced by "evolving standards of decency," *see Roper*, 543 U.S. at 563 (*see* Doc. #728 at 12), he also correctly observes that the

Eighth Amendment's proportionality principle is a "narrow" one, forbidding only sentences that are "'grossly disproportionate' to the crime." *See Hamelin*, 501 U.S. at 1001.  (Doc. #728 at 17).  Consistent with Respondent's opposing argument, the cited studies and initiatives on which Parker relies for the broad proposition that government policy has evolved toward "reject[ing] and revers[ing] severe mandatory sentencing provisions for drug offenses" (Doc. #728 at 13) simply do not support the result that Parker desires as to his own sentence.  (*See* Doc. #735 at 10-11).  For example, Respondent persuasively argues that a cited study remarking on "the diversion of drug offenders from incarceration through expanded treatment options" (*see* Doc. #728 at 13) was addressing alternatives for drug <u>abusers</u>, <u>not</u> conspirators from "large-scale powder and crack cocaine distribution and money laundering organization[s]"[6] such as that with which Parker was involved.  (*Id.* at 10).  Having pled guilty to conspiracy with intent to distribute in excess of 150 kilograms of cocaine, Parker is poorly positioned to equate his situation to that of a defendant found in possession of a small quantity of marijuana.

    As Respondent further notes, Parker's recitation of the United States Sentencing Commission's movement toward equalizing sentences for powder

---

[6]*See Parker*, 543 F.3d at 791.

and crack cocaine (*see* Doc. #728 at 14) also cannot reasonably be interpreted to evince a general softening of societal views toward incarceration for drug trafficking offenses.  (Doc. #735 at 11).  Parker's reliance on *Humphrey v. Wilson*, 652 S.E.2d 501 (Ga. 2007) (*see* Doc. #728 at 14-15), is similarly misplaced.  In *Wilson*, the Supreme Court of Georgia affirmed state habeas corpus relief for a 17-year-old defendant sentenced to 10 years incarceration without the possibility of probation or parole for engaging in consensual oral sex with a 15 year old.  *Id.* at 521.  As that same Court later clarified, application of the *Wilson* holding is limited to "only a small number of individuals whose crimes and circumstances are similar to [that defendant's], *i.e.*, those teenagers convicted only of aggravated child molestation, based solely on an act of sodomy, with no injury to the victim, involving a willing teenage partner no more than four years younger than the defendant."  *Mangrum v. State,* 681 S.E.2d 130, 136 (Ga. 2009).  The *Wilson* decision thus yields no helpful precedent for purposes of deeming Parker's sentence "grossly disproportionate."

Finally, Respondent urges effectively that the principles enunciated in *Harmelin*, 501 U.S. 957, also do not warrant a finding that Parker's five year sentence exceeds constitutional bounds.  Acknowledging "the pernicious effects of the drug epidemic in this country" (*id.* at 1003) and "[t]he severity of

petitioner's crime" (*id.* at 1004), the Supreme Court there affirmed a mandatory

life sentence without parole imposed against petitioner Harmelin for merely

<u>possessing</u> more than 650 grams of cocaine.  *Id.* at 961.  The Court further held

that "[g]iven the serious nature of petitioner's crime, no . . . comparative analysis

is necessary." *Id.* at 1004.  Rather, "intrajurisdictional and interjurisdictional

analyses are appropriate only in the rare case in which a threshold comparison of

the crime committed and the sentence imposed leads to an inference of gross

disproportionality." *Id.* at 1005.

No such inference applies here.  As recognized by the Sixth Circuit, the

facts of *Hamelin* provide a benchmark, compelling a conclusion that lesser

sentences for more serious offenses than were involved in that case also do not

violate the Eighth Amendment's "cruel and unusual punishment" provision.  *See*

*Sherrod*, 1995 WL 253178, at *4.  Indeed, in affirming the defendant's 10 year

mandatory minimum sentence in *Hughes*, the appellate court explicitly attached

significance to the fact that although defendant Hughes and the defendant in

*Harmelin* "lack[ed] a serious criminal history, . . . both were convicted of very

serious crimes."  632 F.3d at 959.  The same is true of Parker.

Additionally, since the *Hamelin* decision, the Sixth Circuit consistently "has

affirmed lengthy prison sentences for drug crimes." *Davis*, 2010 WL 2232411, at

*7 (citing *Jones*, 569 F.3d 569; *Odeneal*, 517 F.3d 406; *Stone*, 218 F. App'x 425).

Moreover, as noted at n.3, *supra*, and contrary to the very premise underlying

Parker's entire argument in this regard [*i.e.*, that "a sentence given without

consideration of all the mitigating factors equates to an unconstitutionally

excessive term of imprisonment" (Doc. #728 at 16)], the Sixth Circuit has stated

that the Eighth Amendment does <u>not</u> require consideration of mitigating factors

at sentencing in non-capital cases.  *Engle v. United States*, 26 F. App'x 394, 397 (6th

Cir. 2001) (citing *Harmelin*, 501 U.S. at 995).

Without the need for a hearing or a comparative analysis of sentences, the

record before this Court definitively demonstrates that Parker's five year

sentence for his role in trafficking 150 kilograms of cocaine legally cannot qualify

as "grossly disproportionate" under the standard articulated in *Harmelin*.

Parker's Section 2255 challenge brought on that basis therefore is not well taken.

### <u>Due Process/Equal Protection of the Laws</u>

Finally, Parker avers that his sentence "[i]nfringes Fifth Amendment

[e]qual [j]ustice principles and [s]tructural [s]eparation of [p]owers [p]rinciples"

(Doc. #728 at 21), supporting that broad claim by allusion to vague due process

and equal protection concerns.  (*See id.* at 21-22).  Indeed, the entirety of Parker's

argument on his third ground is the following single paragraph, set forth

*verbatim*:

> The Supreme Court has explained that "[c]oncern with assuring protection was part of the fabric of our Constitution even before the Fourteenth Amendment expressed it most directly in applying it to the States" and has repeatedly "held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws." *Vance v. Bradley*, 440 U.S. 93, 95 n.1 (1979). In the context of criminal prosecutions, the Court has also explained that a facially valid law can be applied "with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws" because, even when "the law itself [is] fair on its face and impartial in appearance, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886).

(*Id.*).

Assuming *arguendo* that the foregoing recitation accurately reflects the current state of the law applicable in this Circuit, the Court nonetheless concludes that Parker has failed to identify any way in which his sentence violates the constitutional principles there represented. Parker has not alleged that his sentence was levied "with an evil eye and an unequal hand," nor would the record support such a contention. To the contrary, as noted *supra*, the Sixth Circuit consistently has upheld comparable and even harsher sentences imposed

against defendants convicted of drug offenses as serious or objectively less serious than Parker's crime. *See Davis*, 2010 WL 2232411, at *7 (citing *Jones*, 569 F.3d 569; *Odeneal*, 517 F.3d 406; *Stone*, 218 F. App'x 425). Plaintiff has failed to set forth a viable Section 2255 challenge to his sentence under the Fifth Amendment.

**IT THEREFORE IS RECOMMENDED THAT:**

    1) Petitioner Clarence Parker's motion to vacate, set aside or correct sentence (Case No. 3:04cr140, Doc. #728) be DENIED with prejudice and DISMISSED in its entirety; and

    2) This matter be TERMINATED on the docket of this Court.

May 9, 2011
                                     ___s/ Sharon L. Ovington_____
                                             Sharon L. Ovington
                               United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).